JAMES ROBERT HOPKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32797.   Promulgated April 24, 1930.

*Alton Gumbiner, Esq.*, for the petitioner.
*Arthur H. Murray, Esq.*, and *G. S. Herr, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent asserted a deficiency against the petitioner in income tax for 1921 of $6,657.46, to which is added the fraud penalty of 50 per cent, or $3,328.73, making a total of $9,986.19.

As the basis of his appeal, petitioner states that the respondent erred (1) in assuming to assert a tax liability against him after four years from the filing of his return for said year; (2) in imposing the fraud penalty; (3) in disallowing a deduction claimed by petitioner in his return of $1,440, as accrued interest due Mary A. Hopkins; (4) increasing petitioner's income from rented property under the loss shown in the return by $9,271.67; (5) in increasing petitioner's income from a reported business loss in petitioner's return by $39,367.93; and (6) in determining that petitioner was guilty of fraud in understating interest paid out.

The petitioner concedes that his return, as filed, understated his income for that year; and that the major portion of each of the items added thereto by respondent were proper additions, but denies the implications of fraud.

The petitioner is an individual dealer in Oriental merchandise prepared and purchased in China and Japan and sold by him to retail dealers through traveling salesmen. The nature of his business requires him to spend four or five months of each year traveling in China and Japan, during which time his business office, which is located at Saint Joseph, Mo., is in charge of a bookkeeper. The system of bookkeeping maintained by the petitioner, up to and including the taxable year, was an old style, often employed by individual proprietary concerns, which made no provision for a

surplus account. These books, the evidence shows, were crudely kept and during the years 1919 to 1922, inclusive, were handled by four different bookkeepers.

Sometime during 1919 petitioner's son, who served in the United States Army during the World War, returned from the service and assumed charge of the books. He was coached for a time by a Mr. Allen, employed part time by the petitioner and by other concerns. In October, 1920, David Digan was employed by the petitioner as bookkeeper; and he, together with the son, thereafter handled the books. The evidence does not clearly establish the competency of any of these bookkeepers for the task in hand, or the exact part they played in keeping the petitioner's books, except that during 1920 and 1921, the petitioner's son was in charge and directed the entries made.

Prior to 1921 petitioner's inventories had been taken upon a basis other than that of cost or market, whichever was lower, but sometime during this year, after a conference with the agents of the Bureau of Internal Revenue, he was permitted to change his system of making inventories to that of cost or market, whichever is lower. At this conference, which was held in Washington, D. C., the petitioner was represented by Lawrence A. Carr, a tax consultant of Minneapolis, Minn., who, before leaving Washington, handed to the petitioner a pencil memorandum correctly indicating the entries which should be made in petitioner's books to properly show the adjustments agreed upon in his merchandise accounts.

Sometime after petitioner arrived home he delivered the memorandum given to him by the consultant to his son, with directions to make the adjustments therein indicated upon the books. These adjustments pertained to the years 1917, 1918, 1919, and 1920, and called for total reductions in petitioner's merchandise account, as it then stood, of $83,890.44. It was intended that such adjustments be made in petitioner's books for 1922 by crediting merchandise and charging profit and loss with the same. No corrections were made in petitioner's books for 1922; but, after the closing inventories for 1921, an attempt was made to accomplish such adjustments by crediting to petitioner's merchandise account for said year the sum of $31,329.58, and charging the same amount to profit and loss for said year. These entries had the effect of reducing petitioner's income for the year 1921 by the amount of $31,329.58. Each of these entries as made in the journal and posted in the general ledger was accompanied by the notation, " To correct inventories for the years 1917, 1918, 1919, and 1920, priced in error." Other erroneous entries in petitioner's books improperly classified and

commingled various items of insurance, interest, capital charges, expenses, etc., and in some instances carried forward from prior years items theretofore accrued.

About the close of the year 1921, petitioner employed a consultant at Saint Joseph, Missouri, to make up his income-tax return for said year, which consultant disapproved of the method by which petitioner had taken his inventories and advised him that they were all wrong. Petitioner also consulted attorneys from Kansas City, Mo., who voiced further divergent views, and, after some correspondence with his consultant, Carr, at Minneapolis, he called in an income-tax accountant recommended to him by his local bank at Saint Joseph, Mo. To this accountant he turned over all of his books and a balance sheet prepared by his son and bookkeeper David Digan. From the balance sheet delivered to this accountant, he made up the petitioner's income-tax return for the year 1921, which was executed and filed with the collector of internal revenue on and as of February 28, 1922. This return, as filed, understated the petitioner's true income for 1921 substantially as found and determined by the respondent.

Since the return in this case was filed on February 28, 1922, and the deficiency not determined until October 13, 1927, it is obvious that further assessment and collection of any tax for 1921 is now barred by the provisions of section 277 (a) (2) of the 1926 Act, unless the charges of fraud made by the respondent are sustained by the record. *Bonwit Teller & Co.*, 10 B. T. A. 1300. To establish these allegations the respondent produced at the hearing his witness A. S. Lindsey, the internal revenue agent who inspected the petitioner's books covering the period involved. Lindsey testified, in effect, that no concealments of any kind were attempted to be made in respect to the petitioner's business, as affecting his tax obligations for the year involved, in these books; but that on the contrary, these recorded entries, as made by the petitioner's bookkeeper, were positive and conclusive proof as to the understatement of petitioner's income in the return filed. He also stated that it was not infrequent to find, as he sometimes did, similar blunders in bookkeeping made by concerns that kept their books in the old style, as was done here. In such connection it appears that, in respect to one item at least, this taxpayer's books contain errors against his interest; and in another a deductible allowance of $882.50 on account of interest paid that was not claimed in the return. On the whole, the petitioner's business records show a deplorable lack of system and order, and in the keeping of his books little regard has been given to accepted methods of good accounting. However, such lack of system and failure to observe the established rules are not enough,

in themselves, to prove fraud. The fraud contemplated by section 278 (a) of the Act of 1926, which governs, pertains to the filing of a false and fraudulent return with intent to evade taxes. Under the facts here shown, it is clearly established that the return filed by the petitioner was false, but they are not convincing to us that the understatement of income made therein was knowingly made with intent to evade the tax. *National Land Co.*, 10 B. T. A. 527; *Elmer Klise*, 10 B. T. A. 1234; *John B. Arnold*, 14 B. T. A. 954; *Mrs. Niels (Mellie) Esperson, Executrix*, 13 B. T. A. 616.

> *Judgment of no deficiency will be entered for the petitioner.*